George H. WILLIAMSON, Jr. et al., Plaintiffs,

v.

BETHLEHEM STEEL CORPORATION et al., Defendants.

Lavern PRICE, Plaintiff,

v.

BETHLEHEM STEEL CORPORATION et al., Defendants.

Civ. Nos. 71–487, 78–187.

United States District Court, W. D. New York.

April 24, 1980.

Paul Spiegelman, Snyder, N. Y., for plaintiffs.

Dunnington, Bartholow & Miller, New York City, for defendant Company; Anthony A. Dean, New York City, of counsel.

Bredhoff, Cushman, Gottesman & Cohen, Washington, D. C., for defendant Union; Michael H. Gottesman, Washington, D. C., of counsel.

CURTIN, Chief Judge.

The initial issue which must be resolved is the appropriate date from which defendants' actions must be examined under Title VII to determine whether liability exists. Plaintiffs have conceded that with respect to their claims under 42 U.S.C. § 1981, the Second Circuit's holding that a three-year period of limitations is applicable mandates a starting date of October 29, 1968 for such examination, which is three years prior to the filing of the complaint in Civ–71–487. *See, e. g., EEOC v. Enterprise Assoc. Steamfitters,* 542 F.2d 579 (2d Cir. 1976). The point of disagreement between plaintiffs and defendants as to the Title VII starting date concerns whether plaintiffs can utilize a charge of discrimination filed by Lavern Price with the Equal Employment Opportunity Commission ["EEOC"] to fix that date. Plaintiffs argue that the starting date should be August 18, 1967, utilizing the charge filed by Lavern Price on March 15, 1968. Defendants contend that the starting date should be January 25, 1968, which is 210 days prior to August 22, 1968, the date of the earliest filing of a charge with the EEOC by a named representative of the plaintiff in this case. In the alternative, if plaintiffs are allowed to rely on the Price charge, defendants argue that the earliest possible starting date should not be prior to October 1, 1967. Resolution of this issue requires discussion.

Lavern Price, an unnamed class member, mailed a charge to the EEOC on or about March 15, 1968. *See* Exhibit A–1, attached to the Affidavit of Lavern Price, sworn to March 6, 1979. It stated:

I have been constantly by passed over the years for promotions to a supervisory position, because of my Race and Color and prejudice Supervisors. I have over 18 years seniority in the unit and have been acting in the compacity of a supervisor for over 15 years. The only difference in my job and a supervisor's is the color of hat and pay envelope.

There is no evidence as to the precise date EEOC received it. On March 29, 1968, the EEOC referred this charge to the New York State Commission for Human Rights ["NYSCHR"]. A copy of the forwarding letter is attached as Exhibit E–1 to the Affidavit of Anthony Dean, sworn to May 23, 1979. On the same date, the EEOC informed Mr. Price of this step. On April 8, 1968, NYSCHR received a complaint from Mr. Price. Exhibit E–4 to Dean Affidavit. The EEOC informed Lavern Price on June 4, 1968 that NYSCHR had had his case for the required 60-day deferral period and that he could request the EEOC to assert its jurisdiction. The EEOC did begin investigation. Notice of the pending charge of Mr. Price was not sent by the EEOC to the Company until October 20, 1972. In the meantime, NYSCHR, after informing the EEOC on June 28, 1968, that it believed there was probable cause to credit Mr. Price's allegations, dismissed his claim on April 19, 1971.

Mr. Price filed an additional charge of discrimination with the EEOC on July 17, 1973. The EEOC sent Price a letter on July 12, 1976 which informed him that the EEOC review of his charge had ended and that his complaints were resolved by the relief afforded by the Consent and Amended De-

crees, entered in *United States v. Bethlehem Steel Corporation*, Civ–1967–432 (W.D. N.Y.), and that he had the option to accept the back pay offer made pursuant to the Consent Decree. Lavern Price did not accept this offer.

In January of 1978, Price's attorneys requested and obtained a right-to-sue letter on his 1968 charge. Price filed an action in this court on April 12, 1978. The action alleged class claims and Price moved to consolidate his action with the *Williamson* action.

The court notes initially that resolution of whether or not the *Williamson* class can rely on Mr. Price's EEOC charge may have significance for certain members of the class. Applying then-current § 706(d) of Title VII, 42 U.S.C. § 2000e–5(d), alleged discrimination occurring within 210 days prior to the claimed March 15, 1968 filing date of Price could be used to establish liability and provide a basis for relief for class members affected by that discrimination. *McDonald v. United Airlines, Inc.*, 587 F.2d 357 (7th Cir. 1978); *Moore v. Sunbeam Corp.*, 459 F.2d 811, 821–22 (7th Cir. 1972); *Gill v. Monroe County Dep't of Social Services*, 79 F.R.D. 316, 331 (W.D.N.Y. 1978). Two hundred and ten days prior to March 15, 1968 extends the potential period of liability back to August 18, 1967. The significance of this extension lies in the plaintiffs' expressed desire to use a stipulation in the record in *United States v. Bethlehem Steel Corporation*, Civ–1967–432 (W.D.N.Y.), to establish discrimination in hiring and assignments by defendant Bethlehem Steel Corporation ["Company"]. In that case, the government and the Company stipulated that any pattern or practice of discrimination at the Company's Lackawanna Plant ended by October 1, 1967. Thus, if the Price charge can be utilized, the plaintiff class intends to use the *United States v. Bethlehem* record to establish liability by the Company to class members hired and assigned between August 18, 1967 and October 1, 1967.

■ Moreover, contrary to the Company's argument, then-current § 706(b) of Ti-

tle VII, now found in 42 U.S.C. § 2000e–5(c), would not preclude a starting date prior to October 1, 1967. This subsection essentially provides that no charge may be filed with the EEOC until sixty days after proceedings have been commenced with the relevant state agency unless such proceedings have been earlier terminated. The Company argues that although Price first mailed his charge to the EEOC on March 15, 1968, the charge was not technically filed with the EEOC at that time under § 706(b). Rather, the earliest date the EEOC could have filed the charge is said to be June 7, 1968, sixty days after Price filed a formal complaint with NYSCHR on April 8, 1968. Two hundred and ten days prior to that argued filing date would be November 11, 1967, well after the October 1, 1967 date in the stipulation.

This argument is unpersuasive. The Second Circuit has recently discussed the procedural filing requirements of Title VII. The court held that a charge referred to the state agency and held in abeyance by the EEOC for 60 days in order to defer to that agency is "filed" when "the EEOC *first* receives it and not when the sixty-day period ends." *Silver v. Mohasco Corp.*, 602 F.2d 1083, 1088 (2d Cir. 1979), *cert. granted*, —— U.S. ——, 100 S.Ct. 519, 62 L.Ed.2d 418 (1979). The court stated that 42 U.S.C. § 2000e–5(c) requiring "that no charge be 'filed' before the deferral period ends simply means that the EEOC may not process a Title VII complaint until sixty days after it has been referred to a state agency." *Ibid.* *See also Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1976). The court finds *Silver* persuasive and controlling in this action and that Price's filing date is on or about March 15, 1968. Therefore, whether plaintiffs can utilize the filing date of the Price charge must be resolved.

■ The Company argues that plaintiffs cannot rely on the filing of the Price charge because his charge with the EEOC was a narrow claim relating solely to the question of supervisory promotions and not raising all of the broad claims of discrimination made by the *Williamson* class. The

Company asserts that resolution and conciliation of his charge at the administrative level would not reasonably have led to an investigation of the Company's hiring, assignment, seniority, and transfer policies which are the crux of the *Williamson* action. The Company points to the actual investigation by NYSCHR of Mr. Price's 1968 charge to support this argument. Moreover, the Company argues that Lavern Price is not a proper representative of the class because his claim is not typical of the class and because he would not adequately represent the interests of the class. In conjunction with this argument, the Company contends that the outstanding motion to consolidate the *Price v. Bethlehem* action, Civ–78–187, with *Williamson* would not result in a merger of two cases even if it were granted and that any motion to intervene would be untimely. Therefore, the starting date would not be affected.

The argument raised by the defendant Union is simpler. First, the Union points out that it was not named in Price's EEOC charge. Second, the Union argues that Price's charge complains only of his being passed over for promotion to a supervisory, non-bargaining unit position. Since the appointment of supervisors is within the Company's power exclusively, the Union asserts that the *Williamson* class cannot rely in its claims against the Union on a charge filed with the EEOC which does not allege any action for which the Union could be responsible.

The principal argument raised by defendants both at oral argument and in their papers concerns the scope of the Price charge. The allowable scope of a lawsuit is not limited to the specific allegations in an EEOC charge, but rather by "the 'scope' of the EEOC investigation which can reasonably be expected to grow out of [that charge]." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). A private litigant may bring a civil action on any claims of discrimination "like or reasonably related to" allegations raised in the EEOC charge and "growing out of such allegations." *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971); *Jen-*

*kins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164, 167 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973); *Tipler v. E. I. duPont*, 443 F.2d 125, 131 (6th Cir. 1971). In determining the permissible scope of the judicial pleadings, the EEOC charge should be liberally construed, for the jurisdictional requirements of Title VII were not "intended to serve as a stumbling block to the accomplishment of the statutory objective." *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 183 (D.C.Cir.1974); *Canavan v. Beneficial Finance Corp.*, 553 F.2d 860, 864 (3d Cir. 1977); *Danner, supra; see Egelston v. State University College at Geneseo*, 535 F.2d 752, 754–55 (2d Cir. 1976).

Mr. Price's EEOC charge is set out above. A reading of the charge indicates that his concern was the Company's failure to promote him to a supervisory position, which he alleged was because of his race. Although he stated that he had "over 18 years seniority in the unit," there is no allegation on the face of his charge that the Company's seniority system discriminated against him or other black employees. Nor is there any allegation of discrimination by the Company in hiring and assignment, or in its transfer, layoff or recall policies. Mr. Price claimed only that he should have been promoted to foreman in Department 404. The plaintiffs and the defendants of course differ as to whether a reasonable investigation by the EEOC of this charge would have explored the Company's hiring and job assignments and its seniority system and other policies which are at issue in this action, and as to whether his claim is like or reasonably related to the claims in this case.

In determining whether the claim made by Lavern Price is like or reasonably related to those made in the *Williamson* complaint, the court notes initially that it is in fact identical to one of the claims of discrimination alleged by the *Williamson* class. Mr. Price asserted that he was denied a promotion to a supervisory position because of his race; ¶ VII(e) of the *Williamson* com-

plaint charges the Company with "[f]ailing to provide for advancement opportunities . . . to supervisory positions to black persons equal to those opportunities provided for white persons." There can be no question then but that his charge is closely related to the claim of discrimination as to supervisory promotions made in the complaint.

It is also clear that Mr. Price complains of *racial* discrimination, which is the same type of discrimination challenged in the *Williamson* complaint. It is not sex, or age or national origin discrimination, but racial discrimination which is challenged. Thus, looking at this question in a broad way, the type of discrimination alleged in the *Price* charge is like and logically related to that pleaded in the *Williamson* complaint.

Another factor to be considered by the court is the scope of the EEOC investigation which would reasonably grow out of the charge. The Company argues that the EEOC investigation would not concern itself with the hiring, assignment, seniority and other employment practices of the Company, but would have restricted itself to the specific, stated concern of Mr. Price that he was denied promotion within Department 404 to a supervisory position. More specifically, the Company contends that, since an employee's length of service is not a factor which the Company considers in making supervisory promotions, the seniority system at the Lackawanna Plant would not have been the subject of EEOC inquiry. Moreover, since Mr. Price's own hiring and his assignment to Department 404 had occurred so long before the alleged denial of promotion, the Company contends that these aspects of its employment policy similarly would not reasonably have been the subject of investigation. The Company points to the scope of the investigation by and the decision of the New York State Division of Human Rights in support of its position.

The plaintiffs argue, on the other hand, that the scope of the investigation would not have been narrow and would have included the entire range of employment practices at the Company's Lackawanna Plant. In resolving this issue, the analysis of the court in *Danner, supra,* has been instructive. In that case, the plaintiff's EEOC charge claimed, somewhat vaguely, that she had been discharged because of discrimination. Her subsequent civil suit challenged the defendant employer's bidding rights and seniority system. In determining whether her EEOC charge supported her litigation, the court looked at whether an investigation into the *reasons* for her discharge would have reasonably included an inquiry into the defendant's seniority system. The court found that it would have and permitted her civil action. *Id.,* at 162. This approach is rational and persuasive, and the court must consider whether an investigation into the reasons for or behind the Company's failure to promote Lavern Price would reasonably have inquired into the range of the Company's employment practices challenged in the *Williamson* complaint.

The court believes that an inquiry into the reasons for the Company's denying a promotion to Mr. Price would reasonably have considered at least the Company's assignment and seniority policies. This conclusion is based on the following reasons. First, although the defendant's seniority system is not expressly challenged in his EEOC charge, Price does cite in his charge his "over 18 years seniority in the unit." A Title VII complainant is not expected to file a charge with the EEOC which specifically articulates, in precise terms, a narrow legal wrong which has been suffered; rather, EEOC charges typically are in layman's terms. *See, e. g., Sanchez, supra* ; *Jenkins, supra* ; *Willis v. Chicago Extruded Metals Co.,* 375 F.Supp. 362, 365–66 (N.D.Ill.1974); *see also, Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972). Moreover, it is clear that "[a] single charge may 'launch a full scale inquiry' " into racial discrimination. *Motorola, Inc. v. McLain,* 484 F.2d 1339, 1346 (7th Cir. 1973). Given Mr. Price's reference to his long seniority, and given the long-recognized policy of reading EEOC charges expansively, a

reasonable investigation into the reasons why he was not promoted to supervisor would have included an inquiry into the seniority system at the Lackawanna Plant.

Second, papers submitted by the parties with respect to other legal issues pending in this lawsuit make it clear that the structure and makeup of Department 404, the bricklaying department in which Mr. Price worked, would have triggered an inquiry. In 1958 the department was split for the first time into two seniority units. One seniority unit was the craft unit covering the department's bricklayers, who were virtually all white, and one was a unit consisting of the laborers, who were virtually all black. Regardless of whether there is a legitimate justification for the division of Department 404 into two seniority units, which is an issue in the *Williamson* action, the identifiability of the two units by race raises, if not an inference, a question of racial discrimination in both the Company's assignment and seniority policies. A reasonable EEOC investigation would have inquired into whether the operation of the assignment or seniority policies contributed in any way to the Company's failure to promote Price.[1]

Third, and closely related to the above reason, an investigation into Mr. Price's charge would have to have been narrow indeed to pass over or ignore the entire employment context against which his charge was made. As suggested by the plaintiffs, one can infer, from the facts and scope of *United States v. Bethlehem*, Civ–1967–432, the government's lawsuit challenging the Company's employment practices, that the scope of a reasonable EEOC investigation would have considered the entire range of employment policies challenged by the *Williamson* class. In fact, the action by the Department of Justice was brought before Mr. Price's charge was filed and the EEOC would certainly have been aware of such a broad attack against Price's employer for racial discrimination.

Finally, the fact that the New York State Division of Human Rights apparently limited its investigation to the reasons which purportedly justified the denial of a promotion to Mr. Price as an individual is not determinative or even of much help. The failure of the EEOC or an equivalent state agency to investigate, or confining an investigation to less than the scope of inquiry reasonably suggested by a complainant's charge, cannot limit the scope of a subsequent civil action by the complainant. A plaintiff should not be penalized because an investigation was unreasonably narrow. *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir. 1978); *Din v. Long Island Lighting Co.*, 463 F.Supp. 654, 660 (E.D.N.Y.1979). The Company contends that it has been prejudiced because notice of Price's pending charge was not sent by the EEOC until October 20, 1972, which is after the *Williamson* action had begun. But, "[a] civil suit will lie even where the EEOC has failed to give defendant notice of the charge . . . ." *Hicks, supra*, at 966. Moreover, the Company was not without some earlier notice that Mr. Price had filed administrative charges, for the record shows that notice of the charge was sent by the state agency on June 28, 1968. I find this claim of prejudice unpersuasive.

In determining whether the claims in Mr. Price's charge are like or reasonably related to those in the *Williamson* complaint, the court also has found persuasive those decisions which have taken a broad approach to this problem. In *Jenkins v. Blue Cross, supra*, the Seventh Circuit, *en banc*, adopted the position taken by Judge Tuttle in the earlier panel decision in that case. *See* 522 F.2d 1235, 1241 (7th Cir. 1975) (panel decision). The plaintiff's EEOC charge complained that "I feel that I am being discriminated in the terms and conditions of my employment because of my race, Negro"

---

1. For instance, by way of example, the claimed reason and a reason ultimately accepted by the New York State Division of Human Rights for the Company's failure to promote Lavern Price was his failure to obtain craftsman status or training. A reasonable investigation would have inquired into whether or not the Company's policies had precluded or made difficult his obtaining the purported qualifications necessary for promotion.

and that her supervisor had denied her a promotion because she "could never represent Blue Cross with my Afro." The court held that the EEOC charge was sufficient to support a civil action which asserted a comprehensive challenge to the employment policies of Blue Cross, including *inter alia* its hiring and assignment practices. 538 F.2d at 168; *see* 522 F.2d at 1240–41, n.9 for a discussion of the scope of the complaint in the *Jenkins* case. In reaching this conclusion, the court rejected the narrow approach adopted by the district court, and by the panel which originally sat in review, that the plaintiff should "be limited to the specific issue of denial of promotion opportunities due to wearing an Afro hairstyle" which had been raised in her charge. *See* 522 F.2d at 1241. Under *Jenkins*, therefore, a civil suit based on Price's EEOC charge would not be limited to the issue of the denial of promotion. *See Scott v. University of Delaware*, 385 F.Supp. 937 (D.Del.1974), in which the court took a similar approach and held that a civil action alleging racial discrimination in hiring, firing, recruitment, promotion, supervision, wages, terms and conditions, and privileges of employment was supported by the EEOC charge filed even though the charge related only to discharge.

Based upon all of the above discussion, the court concludes that Lavern Price's EEOC charge alleging racial discrimination is like and reasonably related to the charges presented in this case by the *Williamson* class. Although it is recognized that a Title VII complaint cannot be premised upon allegations wholly unlike those presented to

or considered by the EEOC, that is not this case.

Although the above discussion rejects the Company's principal objection to the use of the *Price* charge, defendant's argument presents an additional issue which must be resolved. As set out above, the Company argues that Lavern Price is not a proper class representative in this case because his claim is not typical of those of the class and because he would not be an adequate representative, in part because Mr. Price had not attempted to participate in this case for so long. The plaintiffs contend that their class can rely on the filing date of Lavern Price based on the decision in *McDonald v. United Airlines, Inc.*, 587 F.2d 357, 361, n.10 (7th Cir. 1978), which held that a class is defined by the earliest filing date of any class member, unnamed as well as named if his charges were still pending with the EEOC at the time the class action was brought.[2] Moreover, in the Seventh Circuit's view, these earlier filing dates are also the events which establish the eligibility of others to participate as members of the litigating class. *See id.*, at 361, n.12. If this approach is adopted, defendant's objections are not very relevant and the *Williamson* class would be able to utilize the filing date of the Price charge.[3]

In a class action under Title VII, as a general rule, each and every member of the employee class need not file and comply with the jurisdictional prerequisites of Title VII in order to share in any relief which the class obtains. *Albemarle Paper Co. v.*

**2.** In *McDonald*, two class members filed their EEOC charges on January 25, 1966. The EEOC proceedings on these charges were never completed and no right-to-sue letter was ever obtained. Defendant did not dispute that the reason for this was that a different class member received her right-to-sue letter first and instituted the suit as a class action. The district court denied class action status. After trial the *prevailing* individual plaintiffs refused to appeal the denial of class status, but the two earliest-filing class members, along with other persons, were permitted to intervene to appeal this denial, an appeal which proved successful. The Seventh Circuit ultimately held that when one member of the class, even if unnamed,

initiates the EEOC grievance mechanism, the period of limitations is suspended for the class as a whole.

**3.** The plaintiffs contended that the *McDonald* theory justified utilization by the class of the *Price* filing date without consideration of any other factors. In *McDonald*, however, unlike here, there was no question with respect to whether or not the claims in the charge filed by the earlier-filing class members were "like or reasonably related" to those of the class. Here, the conflict over that issue required the analysis set forth above *before* the class utilization issue was confronted.

*Moody*, 422 U.S. 405, 414, n.8, 95 S.Ct. 2362, 2370, n.8, 45 L.Ed.2d 280 (1975). To require otherwise would be a wasteful and unnecessary administrative requirement. *See, e. g., Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968). But, as stated earlier, only those class members who could have made a timely EEOC filing on or after the date on which another actually did file a charge are eligible to join in a class action based on such a person's filing. The class membership and, thus, the relevant time period is determined by such an analysis.

One district court has found the *McDonald* decision persuasive to a certain extent. *Inda v. United Airlines, Inc.*, 83 F.R.D. 1 (N.D.Cal.1979). The court in *Inda* agreed with the Seventh Circuit that "the relevant filing date for establishing eligibility for membership in the litigating class could be the date of the earlier-filing complainant who was not the original named class representative." *Id.*, at 8. This was so even though the event giving rise to the grievance of the earlier-filing complainant occurred enough days prior to the filing date of the named class representative that he would be barred from class relief on the basis of that representative's filing alone. *Id.* The district court believed, however, that such an "earlier-filing complainant" must take certain steps to participate in the class action in order for her to place her own interests and the interests of potential class members dependent on *her* filing date before the district court. The court would require the filing of an additional class complaint and a motion to intervene before defining the existing class to include the earlier-filing complainant and the employees relying on her filing date. *Id.*, at 8–10.

I am similarly persuaded that the *McDonald* decision accords not only with the jurisdictional structure of Title VII but with the broad remedial intent of that Act. Although I believe the additional pleading

prerequisites required by the *Inda* court in that case have merit, I do not believe they should be a prerequisite in this case. Lavern Price is an earlier-filing complainant. Unlike the situation at issue in *Inda*, however, since his claim is of a continuing violation, he is a class member who can share himself in any class relief obtained based on the filing date of a named representative in the *Williamson* class. Price not only could rely on the pending *Williamson* lawsuit but, as a member of a class certified pursuant to Rule 23(b)(2), he could not litigate in a separate lawsuit the class-wide allegations already made on his behalf in *Williamson*. Under these circumstances, the procedural requirements suggested by the *Inda* court in that case would be illogical and inappropriate here.[4]

Therefore, the court concludes based upon all of the above reasons that the filing date of Lavern Price's EEOC charge is the date to be used to define the class and the starting date for determining liability in this case. That starting date will be 210 days prior to March 15, 1968, which is August 18, 1967. In conjunction, the court believes that the class allegations made in *Price v. Bethlehem*, Civ–78–187, should be dismissed. The individual claim, ¶ X of the complaint, should be stayed pending resolution of the pertinent class claim in *Williamson*.

The court has not yet discussed the contentions of the Union. As a general principle, charging parties cannot bypass the EEOC. It has been held that the failure to name a party in an EEOC charge precludes a subsequent civil suit against that party. *Miller v. International Paper Co.*, 408 F.2d 283, 291 (5th Cir. 1969); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719 (7th Cir. 1969); *see* 42 U.S.C. § 2000e–5(f)(1). Application of this principle to the present case would mandate that the plaintiff class could not use the filing date of the *Price* charge

---

**4.** Even if the procedural requirements proposed in *Inda* were considered appropriate, the court notes that Mr. Price did obtain a right-to-sue letter and initiated a civil action alleging class and individual claims. He made a motion to consolidate his action with *Williamson* which,

as defendant Company points out, could not effect a merger even if granted. But, a further "motion" to intervene appeared in one of plaintiffs' legal memoranda. So, substantial compliance with those requirements, however unnecessary, occurred.

to expand the substantive liability of the Union because the Union was not named in the *Price* charge. Plaintiffs concede that should the extension backward of the starting date through use of the *Price* filing date result in a determination that the Company were liable for hiring, assignment and promotion discrimination, such a result would not result in any direct liability for the Union. *See* Plaintiffs' Supplemental Memorandum of Law, at 6, n.4. At the same time, although plaintiffs' principal target in this matter is the alleged hiring and assignment discrimination occurring prior to the stipulation date in the *United States v. Bethlehem* record, extension of the period of liability for all claims pressed by the class could also result in an order directing broader seniority relief than would have been possible but for the *Price* filing date. This is a matter, of course, which does concern the Union as well as the Company.

█ Given plaintiffs' concession with respect to any substantive liability for the Union for any hiring, assignment and promotion discrimination, the Union cannot be prejudiced by the expansion of the potential liability period. The question of possible expanded relief for any discrimination in seniority or other employment policies against class members during the expanded period can be addressed briefly. In a Title VII action, a district court has the authority to add necessary or desirable defendants even though such parties were not named as respondents before the EEOC. *Evans v. Sheraton Park Hotel*, 503 F.2d 177, 183 (D.C.Cir.1974); *Gill v. Monroe County Dep't of Social Services*, 79 F.R.D. 316, 334 (W.D. N.Y.1978). This seems especially important where it is a question of ensuring that full relief be given to persons who are victims of racial discrimination. The court concludes, therefore, that the use of the *Price* filing date will not unfairly prejudice the Union.

In summary, the plaintiff class in *Williamson* can rely on the EEOC filing date of Lavern Price to define the starting date from which defendants' actions must be examined to determine whether liability un-

der Title VII exists. That date is August 18, 1967. The Union, although not subject to substantive liability by virtue of this order, is included to the extent of ensuring full relief.

So ordered.